PREET BHARARA
United States Attorney for the
Southern District of New York
By: SHARON COHEN LEVIN(SCL-4124)
Assistant United States Attorney
One Saint Andrew's Plaza
New York, New York 10007
Tel. (212) 637-1060

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-----------------------------------x
UNITED STATES OF AMERICA           :

            Plaintiff,             :

        - v -                      :
                                            10 Civ.5390(GBD)
Real Property Known as Unit 5B     :
Of The Onyx Chelsea Condominium
Located at 261 West 28th Street    :
New York, New York 10001-5933
                                   :

        Defendant-in-rem.          :
                                   :
-----------------------------------x
```

## THE UNITED STATES' OBJECTIONS TO THE REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE AND MOTION TO AMEND THE COMPLAINT

### PRELIMINARY STATEMENT

Plaintiff, the United States of America initiated this *in rem* forfeiture action against the defendant property on July 14, 2010.  *See* Docket Number 1.  The United States' forfeiture complaint contains six claims for relief: the United States alleges that 1) the defendant property is subject to forfeiture under 18 U.S.C. §981(a)(1)(A) because it is traceable to or

involved in a transaction in violation of 18 U.S.C. §§1956(a)(1)(B)(i), 1956(a)(2)(B)(ii) and 1957; *See U.S. Compl.* First claim to third claim, ¶¶34-39; 2) the defendant property is subject to forfeiture under 18 U.S.C. §981(a)(1)(B) because it is traceable to an offense against a foreign nation that is punishable by imprisonment for more than one year in that foreign nation and in the United States; *See U.S. Compl.* Fourth claim, ¶¶40-41; and 3) the defendant property is subject to forfeiture under 18 U.S.C. §981(a)(1)(C) because it constitutes or is derived from proceeds traceable to a specified unlawful activity (the "SUA"), as defined in 18 U.S.C. §1956(c)(7) and a conspiracy to commit a SUA as defined in Section 1956(c)(7). *See U.S. Compl.* Fifth claim and sixth claim, ¶¶42-45.  The United States complaint alleges that a bribe was paid to WU, Su-Jen, wife of Taiwan Former President, CHEN, Shui-Bian's by Yuanta Securities Co. Ltd. ("YSC") in exchange for the government's action not to oppose YSC's merger with another financial institution in violation of Taiwan's Anti-Corruption Statute, and as such, is an offense against Taiwan and qualifies as SUA under Section 1956(c)(7)(B)(iv).  The complaint further alleges that Chen family members and close associates engaged in an elaborate scheme to conceal these funds and to ultimately

launder a portion of them to the United States for the purchase of real property in this district.

The Claimant, Avallo Ltd., a British Virgin Islands company, is beneficially owned by Taiwan former President CHEN's family members.  Avallo in turn owns a New York Limited Liability Company, West 28th Street LLC, which is the defendant property title holder.  Avallo moved to dismiss the Complaint under the Federal Rules of Civil Procedure 12(b)(6).  *See* Docket Number 22.

## SUMMARY OF GROUNDS FOR OBJECTIONS TO THE MAGISTRATE'S REPORT AND RECOMMENDATION

On August 26, 2011, without the benefit of a hearing, Magistrate Judge Frank Maas recommended that Claims One through Five of the United States' Complaint be dismissed without prejudice (conditioned on certain future action in court proceedings in Taiwan) and dismissed Claim Six with prejudice. (the "Report and Recommendation"). *See* Docket Number 34.  As more fully set forth below, the Magistrate's Report and Recommendation contains numerous legal and factual errors.  For instance, in dismissing the sixth claim with prejudice, Magistrate Judge Maas incorrectly found that Money Laundering is not included in the definition of "Specified Unlawful Activity"

set forth in Section 1957(c)(7).  *See* Report and Recommendation at 11, 22 n7.  Specified Unlawful Activities, as defined in Section 1957(c)(7), include any act or activity constituting an offense listed under Section 1961(1) which is cross-referenced by Section 1956(c)(7)(A).  Money Laundering violations are indeed among those offenses explicitly listed under Section 1960(1).  *See* 18 U.S.C. §1960(1).

Additionally, in reaching his determination that bribery of a foreign public official as defined under 18 U.S.C. §1956(c)(7)(B)(iv) had not occurred, it was an error on the part of Magistrate Judge Mass both under Rule 44.1 of the Federal Rules of Civil Procedure and pursuant to the Doctrine of Conversion for the Magistrate not to have afforded the United States with an opportunity to rebut factual findings and interpretations of foreign law.  Rather than have the benefit of experts on Taiwan law and referral to foreign law treatises and without knowing what evidence had been presented in the proceedings in Taiwan, Magistrate Judge Maas instead conducted his own cursory review on the internet and relied heavily on an uncertified English translation of an abridged and non-final decision issued by a Taiwan Trial Court on November 5, 2010 which acquitted the former President and the former First Lady

of bribery charges in the YSC bribery case and improperly chose to afford comity to that decision. In particular, Magistrate Judge Maas found that 1) the YSC payments to the former first lady of Taiwan did not amount to bribery under Taiwanese law; *See* Report and Recommendation at 21-22; and 2) the Taiwan trial court decision, which was appealed by the Taiwan prosecution and presently pending at the Taiwan appellate court, was entitled to preclusive effect in the instant case as a matter of international comity; *Id.* at 12-20.

As the Taiwan Prosecutor General's Office attests in the attached declaration, Magistrate Judge Maas' Report and Recommendation suffers from fundamental misunderstandings of Taiwan criminal law and procedure and an unfamiliarity about the specific facts presented in the Taiwan proceedings. *See* Declaration in Support of United States' Objection by Ms. Yi-Fen Ko, the lead prosecutor in the criminal cases in Taiwan against former President CHEN (hereinafter Ko's Declaration), attached hereto as Attachment A, at 3, 5. Under Taiwan law, payments need not have been made directly to the foreign official but could nonetheless be for his benefit. Additionally, a decision of acquittal by the trial court is not a final decision under the laws of Taiwan.

At this stage of the proceedings on a motion to dismiss, the magistrate's inquiry should have been limited to whether the Government's complaint sets forth "sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." *See* Rule G(2)(f) of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions.  When considering a motion to dismiss under Rule 12(b)(6), the court "must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." *Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007).  At this initial pleading stage, the trial court's task "is merely to assess the legal feasibility of the complaint. . . ." *Levitt v. Bear Stearns & Co.*, 340 F.3d 94, 101 (2d Cir. 2003).

Instead, the magistrate improperly delved into fact finding and determination of law both foreign and domestic, without development of evidence that would be expected to be done at trial.  Although relying on Federal Rules of Civil Procedure Rule 44.1 to justify considering otherwise inadmissible evidence to interpret Taiwan law, Magistrate Judge Maas failed to comply with Rule 44.1's requirement to afford the United States an

opportunity to rebut the magistrate's findings on foreign law.
Moreover, on a motion to dismiss, when presented with extrinsic
evidence, Magistrate Judge Maas should have disregarded the
document or converted the motion to dismiss to a motion for
summary judgment and afforded the plaintiff with an opportunity
to conduct appropriate discovery and present additional evidence
in rebuttal to demonstrate that the alleged bribe in violation
of Taiwan law did occur. *Chambers v. Time Warner*, 282 F.3d 147,
154 (2d Cir. 2002); *Kopec v. Coughlin*, 922 F.2d 152, 155-56 (2d
Cir. 1991).

Magistrate Judge Maas also found that the United States'
Complaint failed to allege that former President CHEN was aware
that the YSC bribe payment had been delivered to the former
First Lady or show former President CHEN's direct involvement in
the bribery scheme. *See* Report and Recommendation at 21. On
this point the Magistrate is correct. However, the United
States maintains that under notice pleading, it is not required
to plead with specificity all of the facts demonstrating
President CHEN's knowledge and that the court was required "to
draw inferences from those allegations in the light most
favorable to plaintiff" and thus, could have inferred such
involvement on the basis of the allegations in the Complaint.

Moreover, the magistrate should have afforded the United States
the opportunity to amend the complaint to address the
deficiencies he identified rather than dismissing the complaint.
*Goldman v. Belden,* 754 F.2d 1059, 1065 (2d Cir. 1985)(In
reversing the District Court's dismissal, the Second Circuit
held that "[w]hile a plaintiff who has once taken advantage of
the opportunity to amend his complaint in light of defects to
which his attention has been drawn should be able to achieve
some clarity and precision, and may properly be denied yet
another opportunity to amend, it is nevertheless the rule that
the court should not dismiss the complaint pursuant to Rule
12(b)(6) unless it appears 'beyond doubt that the plaintiff can
prove no set of facts in support of his claim which would
entitle him to relief.'") (internal citation omitted).  The
United States seeks to amend the Complaint to specifically
allege that former President CHEN, a public official, was aware
of the funds in the YSC General Manager Ma, Wei-Chien's basement
vault and ensured the actions and result desired by YSC in
exchange for payment of the bribe by instructing his close aide,
MA, Yung-Chen to convey messages in favor of YSC's desired
merger to then Finance Minister LIN, Chuen who oversaw mergers

and acquisitions among financial institutions and who was President CHEN's appointee.

The Magistrate's unusual remedy of entering a contingent dismissal dependent upon further proceedings in Taiwan fails to recognize that the Government's civil forfeiture action in this District is an independent domestic proceeding that does not hinge on the criminal prosecution of Taiwan. Furthermore, without a *lis pendens* on the property, a protective order, and the tolling of the statute of limitations, the magistrate's remedy prejudices the interests of the United States.[1]

---

[1] Magistrate Judge Maas recommended that if the Taipei District Court's decision is reversed on appeal, the Government should be permitted to reinstate the initial five claims. *See* Report and Recommendation at 22. This finding is inapposite. First, the United States is not seeking to enforce a Taiwan judgment in this Court, but rather, undertakes the burden to demonstrate that the defendant property is forfeitable in this Court at trial. As Judge Moon has correctly recognized in the related case pending in the Western District of Virginia, in an independent U.S. *in rem* forfeiture proceeding, this Court is tasked with and competent to interpret Taiwan law to determine the requirements of SUA, foreign public official bribery, following a full submission of evidence and arguments. *See Ct. Order,* (W.D.Va June 14, 2011), Attachment B, at 7. Therefore, a decision by the Taiwan High Court as it relates to President CHEN's bribery charge is not dispositive to an independent U.S. civil forfeiture action currently proceeding in this Court. If, however, this Court is inclined to be guided by the Taiwan High Court decision, which presumably would be appealed by a losing party to the Taiwan Supreme Court, it would have been grounds for a stay of the proceedings, not a dismissal. *Mottolese v. Preston*, 172 F.2d 308, 309 (2d Cir. 1949).

For all of these reasons, this Court should not adopt the Report and Recommendation by Magistrate Judge Maas but rather, this Court should be guided by U.S. District Court Judge Norman Moon's opinion in the related case *United States v. Real Property known as 2291 Ferndown Lane,Keswick VA 22947-9195*, No. 10 Civ. 37, 2011 WL 2441254 (W.D. Va. June 14, 2011)(Attachment B)[2] and deny Avallo's motion to dismiss and allow the United States to amend the complaint to provide more detailed facts to support its claims.[3]  The United States respectfully submits this memorandum of law pursuant to Federal Rule of Civil Procedure 72(b)(2) in support of its objections to the Magistrate Judge's Report and Recommendation and pursuant to Federal Rule of Civil Procedure 15(a) seeks to amend the complaint.

---

[2] The procedural histories of the WDVA and SDNY cases are virtually identical and the theories for forfeiture are the same.

[3] Magistrate Judge Maas has mischaracterized the court's ruling in *United States v. Real Property known as 2291 Ferndown Lane,Keswick VA 22947-9195*, No. 10 Civ. 37, 2011 WL 2441254 (W.D. Va. June 14, 2011) insofar as he stated that the United States' claims under Section 981(a)(1)(A) and Section 981(a)(1)(B) were dismissed. In fact, the Court dismissed these counts without prejudice and ordered that "[t]o the extent the government wishes to amend its complaint to address the defects identified herein, it will have 14 days to do so." *See Ct Order* (W.D.Va June 14, 2011), Attachment B, at 15.  The United States amended the complaint on June 28, 2011.  The amended complaint was accepted for filing on July 12, 2011 and contrary to Magistrate Judge Maas' suggestion, the Sections 981(a)(1)(A) and 981(a)(1)(B) claims remain viable and intact.

## ARGUMENT

### THE MAGISTRATE JUDGE ERRED IN RECOMMENDING THAT THE COMPLAINT BE DISMISSED

**A.    Standard of Review**

The Court is required to make a *de novo* determination of those portions of a Magistrate Judge's Report and Recommendation to which objections are made.  *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C); *Rivera v. Commissioner of Social Security*, 423 F. Supp. 2d 271, 273 (S.D.N.Y. 2006) (citation omitted).  The Court may accept, reject or modify, in whole or in part, the findings of the report.  Fed. R. Civ. P. 72(b)(3); *see also Figueroa v. Commissioner of Social Security*, No. 04 Civ. 123, 2006 WL 2291087 at *1. (S.D.N.Y. Aug. 2, 2006).

**B.    Magistrate Judge Maas Has Misapplied US Law and Has Misinterpreted Taiwan's Bribery Law**

In considering a motion to dismiss, Magistrate Judge Maas should have examined whether the United States had alleged facts, **which if proved**, "raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

11

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009); *accord Twombly*, 550 U.S. at 556. The Government is not, however, required to have sufficient evidence at the time it files its complaint to establish the forfeitability of property. The Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), Pub. L. No. 106-185, 114 Stat. 202 (2000), codified in part at 18 U.S.C. § 983, makes clear that "[n]o complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property." 18 U.S.C. § 983(a)(3)(D); *see also* Supplemental Rule G(8)(b)(ii) ("In an action governed by 18 U.S.C. § 983(a)(3)(D) the complaint may not be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property.").

In reviewing the complaint the court should not ordinarily look beyond the four corners of the document. However, once Magistrate Judge Maas decided to consider extrinsic information about foreign law, he should have converted the motion to dismiss to a motion for summary judgment and afforded the

plaintiff an opportunity to rebut.  While Federal Rules of Civil
Procedure Rule 44.1 permits a district court to consider any
relevant information, regardless of whether it is admissible or
inadmissible under the Federal Rules of Evidence, in determining
foreign law, *See* Report and Recommendation at 16, the Notes to
Rule 44.1 state: "Ordinarily the court should inform the parties
of material it has found diverging substantially from the
material which they have presented; and in general the court
should give the parties an opportunity to analyze and counter
new points upon which it proposes to rely." Fed. R. Civ. P. 44.1
advisory committee's note.  Rule 44.1 that Magistrate Judge Maas
cited numerous times in his report, contemplates that a district
court will conduct a full-range and independent review by
considering all of the materials presented by parties including
foreign law expert testimony as well as relying on its own
research of available materials to ascertain the content where
foreign law is an issue to be determined by the court.  *Twohy v.
First National Bank of Chicago*, 758 F.2d 1185, 1193 (7th Cir.
1985) ("it must be remembered that one of the policies inherent
in Rule 44.1 is that whenever possible issues of foreign law
should be resolved on their merits and on the basis of *a full
presentation and evaluation of the available materials*.")

(Quoting 9 C. Wright & A Miller, Federal Practice and Procedure §2444 (1971)) (emphasis added). However, Magistrate Judge Maas, in forming his determination on the Taiwan Anti-Corruption Statute that the YSC payments made to the former First Lady did not amount to a bribe of a public official under Taiwanese law, did not afford the United States any opportunity to submit relevant materials to aid in that interpretation including written or oral expert testimony accompanied by extracts from various kinds of foreign legal materials and foreign statutes, foreign judicial cases and foreign law treatises which remains the basic mode of proving foreign law. See *Bigio v. Coca-Cola Co.*, 2010 WL 3377503 at *4-5 (S.D.N.Y. 2010)(At a motion to dismiss stage, both parties were allowed to submit expert declarations on Egyptian law to aid the district court to interpret foreign law). Rather, he interpreted the Taiwan Anti-Corruption Statute on his own based merely on his research on an internet website http://db.lawbank.com.tw/Eng/FLAW/FLAWDAT0202.asp and an uncertified English translation of an abridged non-final decision rendered by a Taiwan trial court. *See* Report and Recommendation at 21, 22. As such, Magistrate Judge Maas' examination on the Taiwan Anti-Corruption Statute was

inadequate, and according to the Taiwan prosecutors who practice criminal law in Taiwan, his understanding is inaccurate.  At a very minimum, Magistrate Judge Maas should have provided the United States with an opportunity to present additional materials relevant to interpretation of foreign law.  Notably, the very case relied upon by Magistrate Judge Maas to support his actions, *Haywin Textile Prods. V. Int'l Fin. Inv.& Commerce Bank, Ltd.,* 152 F.Supp.2d 409, 411 (S.D.N.Y. 2001)[4] actually supports the United States' position that the court, before ruling on a motion to dismiss, should have permitted the parties to submit expert opinions to help the court establish the contents of foreign law.  *Haywin*, 152 F. Supp. 2d at 411.

Contrary to the procedure contemplated under Rule 44.1, Magistrate Judge Maas, in recommending the dismissal of the United States' forfeiture complaint, improperly foreclosed any opportunity for the United States to present any merit materials including expert testimony to aid the Court to determine correctly the substance of Taiwan law.  Magistrate Judge Maas' cursory effort in examining the Taiwan Anti-Corruption Statute is at odds with a "full presentation and evaluation of the available materials" envisioned under Rule 44.1.

---

[4] *See* Report and Recommendation at 16 fn 5.

Magistrate Judge Maas erred in summarily concluding that the United States will not be able to prove at trial that YSC's payments to the First Lady constitute "bribery of a public official" because she is not a public official. *See* Report and Recommendation at 22. Magistrate Judge Maas made the determination without the benefit of receiving any evidence that a bribery scheme cannot be established under Taiwan law. See *Report and Recommendation* at 21-22. Under Taiwan's bribery law, the payments need not be made directly to the foreign official but can be made by or for his benefit. In this regard, Taiwan's law is similar to U.S. bribery law. Thus, the fact that payments were made to the First Lady does not defeat the bribery claim. In addition, the Magistrate's Report and Recommendation did not take into consideration the grounds for the appeal in Taiwan, which set forth how the bribery scheme can in fact be established under Taiwan law. The Taiwan trial court decision for acquittal was premised on a factual determination that the President's official duties did not include regulating the merger of financial institutions; however, even if such actions were not within his day to day responsibilities as President, it did fall within President CHEN's sphere of influence over then-finance Minister, one of his political appointees in his

16

Government who oversaw mergers and acquisitions among financial institutions to whom the President could and did convey support for the merger.[5]  The United States has alleged that foreign bribery occurred and it was an error on the part of Magistrate Judge Maas to recommend dismissal at this early stage and peremptorily conclude that "bribery of a public official under Taiwanese Law" cannot be established.  *See also,* Attachment A, Ko's Declaration at ¶5(2).

Finally, Magistrate Judge Maas believes that the U.S. action is inextricably intertwined with the Taiwan criminal prosecution and that the U.S. civil forfeiture proceeding rises and falls with the outcome in Taiwan.  This is simply incorrect. This is an independent action.  The issue of whether the United States can proceed in the face of an adverse non-final ruling in Taiwan was specifically considered by U.S. District Court Judge Norman Moon in the related WDVA civil forfeiture action.  U.S. District Court Judge Moon concluded that the forfeiture action needs not await the outcome of the proceedings in Taiwan and that U.S. federal judges possess the competency to interpret

---

[5] The degree to which President CHEN could influence such decision-making process on the YSC's desired merger and how such influence has been exercised are questions of fact that must be reviewed under a more lenient civil standard in a civil forfeiture matter and determined at the trial and not the beyond a reasonable doubt standard needed for a criminal prosecution.

foreign laws. *See,* fn 1 *supra.*

**C.  Magistrate Judge Maas' Application of International Comity Principles is Premature.**

> 1. Taiwan Trial Court Decision is Not a "Final Judgment".

Magistrate Judge Maas incorrectly assumed that Taiwan criminal procedure is the same as in the United States and suggests that an acquittal by the trier of fact is a "final judgment" entitled to "preclusive effect."  *See* Report and Recommendation at 19.  As the attached declaration from the lead prosecutor in the Chen prosecution team in Taiwan attests, Magistrate Judge Maas is clearly mistaken.  The Taiwan Trial Court decision is not a non-appealable final judgment with a "Double Jeopardy" effect attached as would occur under U.S. law. The Taiwan Code of Criminal Procedure authorizes an appeal of an acquittal to a Taiwan appellate court.  *See* Attachment A, Ko's Declaration at ¶4(2).

Additionally, just as a magistrate's findings in the U.S. are given *de novo* review by U.S. district court judges, so too are Taiwan district court rulings reviewed on a *de novo* basis when appealed to the Taiwan High Court.  The appeal in Taiwan essentially constitutes a retrial in which new evidence may be introduced by both parties and the Taiwan High Court, upon receiving completed evidence submission, will make its own

18

independent determination on both facts and law. *Id.* As indicated, in the appeal by the Chen family of the criminal case in Taiwan, the submission of evidence to the High Court has been completed and parties are presently awaiting the High Court's ruling on issues of both facts and law. *Id.* ¶5(1). In the appellate proceedings underway in Taiwan, the Prosecutors contend that the Taiwan Trial Court erred in its findings on both factual and legal issues and have furnished detailed rebuttal to each of those errors identified in that decision. *Id.* ¶5(2).

    2. <u>The Taiwan Trial Court Decision is Not Entitled to International Comity.</u>

In recommending dismissal of the complaint, Magistrate Judge Maas granted comity to the non-final judgment of the Taiwan District Court. *See* Report and Recommendation at 20. Application of comity in the instant circumstances was improper.

As defined by the United States Supreme Court, "'Comity,' . . . is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws." *See Hilton v. Guyot*, 159 U.S. 113, 163-64. (1895)(The Supreme Court

declined to afford a <u>final</u> French judgment, which sought

enforcement of debts owed to the Plaintiff, full credit and

conclusive effect, and held that "at the time of the adoption of

the constitution, a foreign judgment was considered as prima

facie evidence, and not conclusive.").

Magistrate Judge Maas should not have accorded comity to a

foreign judgment that he knew was being challenged. [6]

Magistrate Judge Maas cites to *Remington Rand Corp. v. Bus.*

*Sys., Inc.*, 830 F.2d 1260, 1266 (3d Cir. 1987) (citing *In re*

*Colorado Corp.*, 531 F.2d 463, 469 (10th Cir. 1976)) as support

for his finding that courts can give comity to non-final

judgments.  *See* Report and Recommendation at 20.  However, these

cases are distinguishable.  In *In re Colorado Corp.*, the Tenth

Circuit accorded comity to a foreign order dissolving a foreign

corporate creditor and appointing liquidators.  A critical

distinction in the *Colorado Corp.* case is the fact that the

party opposed the court's recognition of the dissolution orders

based on lack of reciprocity accorded to the U.S. courts by that

---

[6] Moreover, Magistrate Judge Maas should not have given *res*
*judicata* effect as a matter of comity because the Taiwan
corruption prosecution and the instant *in rem* forfeiture action
do not involve the same parties, which is an essential element
of *res judicata*.  *EDP Medical Computer Systems, Inc. v. United*
*States,* 480 F.3d 621, 624 (2d. Cir. 2007).

foreign jurisdiction, not on the legality of the order itself. And, the *Remington Rand Corp.* case is an example of where the Third Circuit refused to extend comity to a Dutch order where the district court saw the Dutch order as encompassing a different scope from the parties' suggestion.

In contrast, the Second Circuit has addressed the issue directly and held that comity should be denied where the legality of a foreign judgment is being challenged. *See Norex Petroleum Limited v. Access Industries*, 416 F.3d 146, 160-62 (2d Cir. 2005). In *Norex Petroleum Ltd.*, the Plaintiff - the majority shareholder of Russian Oil Company brought an action in the United States District Court for the Southern District of New York alleging substantive and conspiratorial violations of the Racketeering Influenced and Corrupt Organizations Act in connection with the alleged takeover of the company by the defendant corporation, associations, and individuals. *Id.* at 150-151. The district court dismissed the complaint. It had relied, in part, on a Russian default judgment against the plaintiff in which the district court had given preclusive effect and which the Plaintiff had challenged on the grounds of improper service of process. *Id.* The Second Circuit, in reversing the district court's dismissal, opined that the

Russian default judgment <u>cannot</u> be given preclusive effect by this Court because that plaintiff has challenged that judgment on personal jurisdiction grounds and has not yet been heard on that challenge. *Id.* at 160-162. Similar to *Norex Petroleum Ltd*, the Taiwan Trial Court decision has been challenged by the Taiwan Ministry of Justice, the prosecuting agency designated to enforce Taiwan criminal laws.

**D.    The United States should be Allowed to Amend the Complaint**

The United States respectively requests to amend its Complaint filed in this Court to plead facts with more specificity to show former President CHEN's knowledge or direct involvement in the bribery scheme, which Magistrate Judge Maas has found to be a defect in the United States' complaint as well as to provide updated information regarding the status of Taiwan proceedings that have occurred since the filing of the original complaint.

Pursuant to Federal Rule of Civil Procedure 15(a), a party may amend a complaint or other pleading after the filing of a responsive pleading by leave of the court. "Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded." *Forman v. Davis*, 371 U.S. 178, 182 (1962) (quoting Fed. R. Civ. P. 15(a)). While it

is within the discretion of the Court to grant leave to amend, such leave should not be denied unless the amendment would be prejudicial to the opposing party, there has been bad faith or undue delay on the part of the moving party, or the amendment would have been futile. *See State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981).

Here, the United States has not previously amended the Complaint. Avallo Ltd. has not yet filed an answer to the United States' complaint and no discovery has yet occurred. An amended complaint will provide Avallo with additional details regarding the events giving rise to this action supporting the government's legal theory of the case. The grounds for forfeiture will not change. Thus Avallo would not be prejudiced by an amended complaint. Moreover, the United States has not caused undue delay nor exhibited bad faith, and the United States' proposed amendment is not futile because it corrects defects identified by Magistrate Judge Maas. For these reasons, this Court should allow the United States to amend its complaint. A proposed United States' First Amended Verified Complaint and a proposed order are submitted herewith as Attachment C.

## CONCLUSION

For the foregoing reasons, the report and recommendation to dismiss the United States' Complaint should be rejected.  Its motion to amend the complaint should be granted.

Dated: New York, New York
      September 12, 2011

                    PREET BHARARA
                    United States Attorney for the
                    Southern District of New York

By:_____/s/_____
                    SHARON COHEN LEVIN (SCL-4124)
                    Assistant United States Attorney
                    One St. Andrew's Plaza
                    New York, New York 10007
                    Telephone: (212) 637-1060

                    JENNIFER SHASKY CALVERY
                    Chief
                    Asset Forfeiture and Money
                    Laundering Section
                    Criminal Division
                    United States Department of
                    Justice

By:____ ___ ____/s/_____
                    LINDA M. SAMUEL (DC Bar #388970)
                    Deputy Chief
                    JENNIFER WALLIS (VA Bar #75547)
                    Trial Attorney
                    1400 New York Avenue, N.W., 10th
                    Floor
                    Washington, D.C. 20530
                    Telephone: (202) 514-1263

                    Attorneys for the Plaintiff
                    United States of America